UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUSTIN J. PRICHARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03141-SEB-TAB |
| ) | |
| WEXFORD HEALTH CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Dustin J. Prichard alleges that defendants were deliberately indifferent to his pain both before and after he passed a kidney stone. He alleges that 1) defendants Blunt, McNew, Cross, and Mullins refused to provide him medical treatment or healthcare request forms while he was experiencing pain, 2) defendants Johnson and McNew failed to treat his pain, 3) defendant Storms failed to seek medical treatment for him after he passed the kidney stone and remained in pain, and 4) defendants Wexford Health Corporation (Wexford) and GEO Group, Inc. (GEO) failed to properly train their employees to treat pain from kidney stones and provide inmates healthcare request forms. Before the Court are the defendants' motions for summary judgment. Dkts. [56], & [60]. Mr. Prichard responded and the defendants replied. The motions are now ripe for review. For the reasons explained in this Order, the defendants are not entitled to summary judgment on Mr. Prichard's claims.

**I.
Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R.

Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Eighth Amendment Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016) (alteration in original) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a claim that defendants were deliberately indifferent, a plaintiff must establish that he suffered from "an objectively serious medical condition" and that the "defendant[s were] deliberately indifferent to that condition."

2

*Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) ("All of this is not to say, however, that every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim, for clearly that is not the case.").

The dispute, as in most claims of deliberate indifference, lies in whether the prison official knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties*, 836 F.3d at 728; *see Farmer*, 511 U.S. at 834. "An official is deliberately indifferent when he disregards a known condition that poses 'an excessive risk to inmate health or safety.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999)). Mere negligence or malpractice is insufficient. *Id.*

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

## IV.
## Factual Background Including Disputes of Material Fact

Mr. Prichard was an inmate at New Castle Correctional Facility (New Castle). This case is about Mr. Prichard's medical treatment in February 2018, when he passed a kidney stone. Before 2018, Mr. Prichard had passed kidney stones on one or two other occasions at New Castle. Dkt. 62-

11 at 15; dkt. 77-1. In 2017, Mr. Prichard broke into the medical cage at New Castle and stole over 8,000 Neurontin pills along with the sack lunches belonging to nursing staff. *Id*. After this incident, he was placed in the segregation unit at New Castle where he was housed during the events alleged in his complaint. Dkt. 62-11 at 17.

### A. Defendants

Defendants Johnson, Blount, and McNew are Licensed Practical Nurses. Dkt. 62-1; dkt. 62-3; dkt. 62-8. The scope of their work included conducting routine medical assessments to determine if an inmate needed to be seen by a doctor, charting medical encounters with patients, taking vital signs, and assisting other medical staff in their duties. Their duties did not include diagnosing medical conditions, prescribing medication, or directing a course of treatment. Dkt. 62-3. At the time of the events at issue in this case, these defendants were employed by defendant Wexford of Indiana, LLC, which is a private entity under contract with IDOC to provide medical care in Indiana prisons.

Defendants Storms, Mullins, and Cross are correctional officers employed by defendant GEO Group, Inc., a private entity under contract with the state of Indiana to run a private prison in New Castle, Indiana.

### B. February 2018: Mr. Prichard's Kidney Stone

Mr. Prichard testified at his deposition that on the morning of February 9, 2018, he had trouble urinating and began experiencing pain in his lower back. He had a prescription for Cymbalta to address pain caused by bone spurs, but it did not help either his bone spur pain or his back pain that day. Dkt. 69-9 at 1; Dkt. 77-1 at 1. He also had ibuprofen and took it when his back started to hurt that morning. Dkt. 62-11 at 25. The pain worsened throughout the day and he laid down on the floor in the fetal position by his cell door so that he could notify an officer when they

passed by. He asked correctional staff for a healthcare request form, but Officer Mullins and Sergeant Cross told him they did not have any and that he would have to request one from medical staff when they came around to pass out medications. Dkt. 62-11 at 21-22.

Later that day, Nurse McNew came to deliver Mr. Prichard's dose of Cymbalta. He was lying on the floor of his cell and cried out to her, asking to be seen by medical staff. She told him he would have to fill out a healthcare request form. He asked her for one and she said she did not have any forms with her but that she would return with one. She also stated to the officer who escorted her through segregation, "Listen to him. . . . He needs medical help now. He should have thought about that before he broke into the med cage." Dkt. 62-11 at 22. Nurse McNew did not return with a request form. Between February 9, 2018, and February 11, 2018, Mr. Prichard also requested a health care request form Nurse Blount when she completed rounds in the segregation unit. She said she would bring him one later, but she did not. *Id*. at 32-33.

Affidavits from the defendants confirm Mr. Prichard's inability to get a healthcare request form. Lieutenant Larry Storms testified in his affidavit that "Correctional Staff and Officers, such as Sergeant Cross and Officer Mullins, do not provide medical care to offenders and do not maintain for distribution health care request forms. Health care request forms are available to offenders from many other sources, including medical staff who make rounds, called med pass, to the Restricted Housing Unit multiple times per day." Dkt. 58-1 at 3. But Nurse Blount testified in her affidavit that she did not pass out health care request forms during med pass because it would slow her down too much. She is aware of no policy requiring her to pass out healthcare request forms. She believes that inmates in restrictive housing can acquire healthcare request forms from custody staff. Dkt. 62-8 at 1-2. Dr. Ippel also testified that nurses do not carry health care request forms to pass out during med pass. Dkt. 62-9 at 9.

This conflicting testimony from the defendants **creates a dispute of material fact** as to whether Mr. Prichard had access to healthcare request forms on February 9, 2018, while he experienced worsening pain from a kidney stone, and whether the defendants who denied him healthcare request forms on that date were deliberately indifferent to his pain. It further **creates a dispute of material fact** as to whether Wexford and/or GEO maintained a policy or practice that deprived inmates in restricted housing access to health care request forms, which in turn would deny them healthcare.

On February 10, 2018, Mr. Prichard continued to experience pain in his low back and abdominal pain on his left side. Shortly after 6:00 am, he told Lieutenant Storms that he was in severe pain from a kidney stone. Lieutenant Storms told Mr. Prichard that Mr. Prichard was faking an injury to get pain medication and that Mr. Prichard would have to submit a health care request form. Dkt. 68 at 26.

Later that day, other inmates began kicking their cell doors to alert officers that Mr. Prichard needed medical attention. Dkt. 62-11 at 17-18. Officers then escorted him to a medical exam room in the segregation unit where he was assessed by defendant Nurse Johnson. Nurse Johnson thought that Mr. Prichard may be constipated but he denied that. He asked for pain medication, but Nurse Johnson said she could not give him any. She said she would talk to the nurse practitioner who would see him later that day. *Id.* at 18-19. Nurse Johnson noted that Mr. Prichard's vital signs were normal and that he had received Cymbalta that day. She consulted with the nurse practitioner who did not order any additional pain medication. Instead, Nurse Johnson gave Mr. Prichard Milk of Magnesia to address his stomach pain. Dkt. 62-1.

That evening, Mr. Prichard saw defendant Nurse Laura McNew with Nurse Gibson, who is not a defendant in this action. The nurses again took Mr. Prichard's vital signs. He reported to

them that he had taken ibuprofen when he first began experiencing pain the prior morning. Nurse McNew assessed Mr. Prichard to be in mild distress. He reported minimal discomfort upon urination. Dkt. 62-3 at 2-3. The nurses again assessed Mr. Prichard as being constipated and he again denied that he was having any trouble with bowel movements. They again administered Milk of Magnesia. Dkt. 62-11 at 24-26. Nurse McNew completed a health care request form for Mr. Prichard during this encounter. Dkt. 62-5.

Several hours later, at 1:49 am on the morning of February 11, 2018, Mr. Prichard was again seen by Nurse McNew at sick call. She began the encounter by telling Mr. Prichard that he was not going to get any pain medication. Nurse McNew testified in her affidavit that Mr. Prichard said he was not seeking pain medication. He disputes this. He says he told her he was not only seeking pain pills, but that he was truly in extreme pain and needed something to make it stop. Mr. Prichard told her he had a kidney stone in 2013. She again took his vitals, which were normal, took a urine sample, and conducted an EKG. Dkt. 62-11 at 26-30. He was not given any pain medication.

Mr. Prichard passed a kidney stone into a Styrofoam cup either late on the evening of February 10, 2018, or in the early hours of February 11, 2018. Mr. Prichard states that he gave the cup to Lieutenant Storms who said he passed it on to Dr. Ippel. *Id*. at 36-39. On Monday, February 12, 2018, Lieutenant Storms sent an email to Nurse McNew to inform the medical department that Mr. Prichard showed him something in a cup that Mr. Prichard claimed was a kidney stone. Nurse McNew responded: "Per our assessment as well we determined the possibility of 'kidney stone.'" Dkt. 77-3 at 4.

Mr. Prichard submitted an affidavit in response to the IDOC defendants' motion for summary judgment which makes additional allegations regarding his interactions with the IDOC

7

defendants. The affidavit states that when Mr. Prichard gave his kidney stone to Lieutenant Storms, he told Lieutenant Storms that he was in severe pain and needed to be taken to medical, but Lieutenant Storms did nothing. Dkt. 68 at 27-28. Mr. Prichard also asked defendants Cross and Mullins for health care request forms after he passed the kidney stone, but they refused. Dkt. 68 at 27-28.

The IDOC defendants object to these statements because they were not included in Mr. Prichard's deposition testimony and he testified at his deposition that he had recounted all his conversations and requests for health care request forms from the IDOC defendants. Dkt. 62-11 at 44-46. They argue that Mr. Prichard is attempting to overcome summary judgment with a sham affidavit. Dkt. 70. Mr. Prichard responded to these allegations with a motion for leave to file a surreply, arguing that his memory was jogged as he drafted his response to the motion for summary judgment so that he recalled additional details of his conversation with Lieutenant Storms. Dkt. 73. The Court notes that Mr. Prichard's amended complaint was submitted under penalty of perjury and alleged that when he gave Lieutenant Storms his kidney stone on February 11, 2018, he told the Lieutenant that he was in serious pain, but Lieutenant Storms did not get him medical assistance or pain medication. Dkt. 38 at 8. The amended complaint also states that he continued to have pain in his low back and side and that defendants Blunt, McNew, Mullins, and Cross, denied his requests for health care request forms.

A plaintiff cannot overcome summary judgment by filing a sham affidavit. But, "because a deponent may be confused by a question and his memory may fail, a judge may [] consider an affidavit that contradicts a statement in a deposition if the statement is demonstrably mistaken.*James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). Here, Mr. Prichard's testimony at his deposition that he had recounted

all his interactions with defendants Storms, Mullins, and Cross, is clearly mistaken because his sworn amended complaint contained additional interactions with these defendants that were not discussed at his deposition.

For this reason, Mr. Prichard's motion to file surreply, dkt. [73], is **granted** and the Court concludes that the IDOC defendants are not entitled to summary judgment because material **questions of material fact remain** as to whether they denied the plaintiff healthcare request forms and access to medical treatment when he complained of severe pain both before and after passing a kidney stone.

Mr. Prichard eventually received a health care request form from Sergeant Altom. *Id*. at 33. Despite passing a kidney stone in his cell on February 11, 2018, Mr. Prichard was not seen again by medical staff until February 27, 2018. Dkt. 68 at 28.

Although it is undisputed that Mr. Prichard received some medical attention on the afternoon and evening of February 10, 2018, and the early morning hours of February 11, 2018, the medical attention he received was from Licensed Practical Nurses who were not authorized to prescribe pain medication. It is undisputed that Mr. Prichard exhibited signs of pain and that the medical defendants did not provide him pain medication or ensure that he was seen by a medical provider who could prescribe medication. It is also undisputed that he did not receive medical care for this pain on February 9, 2018, or after he passed the kidney stone on the morning of February 11, 2018.

Although the defendants note that Mr. Prichard received a disciplinary conviction for stealing thousands of Neurontin pills in 2017, this does not explain why he was not provided with a non-narcotic alternative for his pain in February 2018. He testified that he took ibuprofen on his own when the pain first began and that he took Cymbalta for a bone spur. But he testified that the

Cymbalta was ineffective for the bone spur pain, and that he remained in pain despite receiving his usual dose of the drug throughout his kidney stone ordeal.

For these reasons, defendants Blount, Johnson, and McNew are not entitled to summary judgment. **Disputes of material fact remain** regarding whether they were deliberately indifferent to Mr. Prichard's pain, in addition to the disputed facts regarding access to health care request forms discussed above.

Construing the facts in the light most favorable to Mr. Prichard as the non-movant, the defendants have not demonstrated that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. There are disputes of material fact as to whether:

> 1) Mr. Prichard was denied health care request forms, and therefore medical treatment, both before and after he passed a kidney stone on February 11, 2018,
> 2) he requested pain medication when he was seen by the medical defendants and whether they were deliberately indifferent to his pain,
> 3) the defendants Wexford and GEO maintained a policy and practice of denying inmates in segregation access to healthcare request forms, and therefore medical care, and
> 4) defendant Wexford failed to train its staff in the proper diagnosis and treatment of kidney stones.

## IV.
## Conclusion

For the reasons stated above, the defendants' motions for summary judgment, dkts. [56] & [60], are **denied**, and the plaintiff's motion to file a surreply, dkt. [73], is **granted**.

Because it is the Court's preference that Mr. Prichard be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent him.

Mr. Prichard shall have **through October 2, 2020,** in which to object to the recruitment of counsel on his behalf.

**IT IS SO ORDERED.**

Date: _____9/10/2020_____  _____*Sarah Evans Barker*_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DUSTIN J. PRICHARD
520 E Market St #125
Indianapolis, IN 46204

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Jarod Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com